Argued and submitted December 18, 2012, affirmed June 11, 2014

Jeffrey KRAFT
and Angela Schmiede,
*Plaintiffs-Appellants,*

*v.*

ESTATE OF JOHN RONALD COOPER, SR.;
et al,
*Defendants,*

*and*

CHICAGO TITLE INSURANCE COMPANY
OF OREGON,
*Defendant-Respondent.*

Jeffrey KRAFT
and Angela Schmiede,
*Plaintiffs-Appellants,*

*v.*

ESTATE OF JOHN RONALD COOPER, SR.;
et al,
*Defendants,*

*and*

Anthony W. FURNISS,
in his capacity as Personal Representative of
the Estate of John Ronald Cooper, Deceased,
*Defendant-Respondent.*

Multnomah County Circuit Court
100304347; A147776 (Control), A148616

330 P3d 639

Margaret H. Leek Leiberan argued the cause for appellants. With her on the briefs was Jensen & Leiberan.

Matthew Cleverley argued the cause for respondent Chicago Title Insurance Company of Oregon. With him on the brief was Fidelity National Law Group.

Glen S. Shearer argued the cause for respondent Anthony W. Furniss. With him on the brief was Furniss, Shearer & Leineweber.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

**ARMSTRONG, P. J.**

Plaintiffs challenge on appeal separate grants of summary judgment for defendant Chicago Title Insurance Company of Oregon (Chicago Title) and defendant Anthony Furniss, in his capacity as personal representative of the Estate of John Ronald Cooper (Cooper). At its heart, the issue in this case is whether the legal description in a warranty deed from Cooper to plaintiffs was an accurate description of the property conveyed. We agree with the trial court that it was and affirm.

On review of grants of summary judgment, we review the record in the light most favorable to the nonmoving party and draw all reasonable factual inferences in that party's favor. *Jones v. General Motors Corp.*, 325 Or 404, 408, 939 P2d 608 (1997). The background facts are undisputed and set out below. When necessary to our disposition, we discuss elsewhere in this opinion in more detail the evidence produced on summary judgment with respect to each summary-judgment motion because those motions were decided at different times and on different records.

Plaintiffs purchased a historic home on a large lot in Portland from Cooper, who at the time of the transaction was still living. Cooper was represented in the transaction by his son John, a real estate agent with Realty Trust. The handout for the historic home stated, as one of the home's "[f]eatures," that "[the p]roperty sits on 6 Lots," and the RMLS listing included as part of the "private" information that "[t]he property offers 6 city lots." Plaintiffs and Cooper entered into a purchase agreement for the property that provided,

> "Neither Seller nor any Licensee(s) warrant the square footage of any structure or the size of any land being purchased. If square footage or land size is a material consideration, all structures and land should be measured by Buyer prior to signing or should be made an express contingency in this Agreement."

The agreement also provided that "Seller and Buyer agree that[,] if it is not provided herein, a complete legal description as provided by the title insurance company * * * shall,

where necessary, be used for purposes of legal identification and conveyance of title." A complete legal description was not included with the sales contract.

Plaintiffs purchased title insurance for the property from Chicago Title. Chicago Title issued a title report that failed to pick up a 1924 deed from a prior owner of the property to the City of Portland that conveyed a 10-foot strip bordering NE U.S. Grant Place. As a result, the deed was not a stated exception in the final title policy. As relevant here, the title policy issued by Chicago Title, subject to the stated exclusions, exceptions, and conditions and stipulations, insured against loss or damage incurred "by reason of * * * [t]itle to the estate or interest described in Schedule A being vested other than as stated therein; [or] * * * [a]ny defect in or lien or encumbrance on the title[.]" The title that the policy insured was title to the property described in the legal description prepared by Chicago Title. In Schedule B, the title policy expressly excepted from coverage any loss or damage "which arise by reason of * * * [d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments or other facts which a correct survey would disclose."

Cooper transferred the property to plaintiffs by warranty deed, using the legal description provided by Chicago Title. That legal description provides in full, with the portion that is at the heart of this dispute emphasized:

"Beginning at a point on the East line of NE 28th Avenue, 225 feet South of the South line of NE Thompson Street; **thence South along the East line of NE 28th Avenue, 151.88 feet, more or less, to the North line of NE U.S. Grant Place, as now laid out and established**; thence Easterly along the North line of NE U.S. Grant Place, 195.04 feet, more or less, to the East line of Tract 4, BOWERING TRACT, as shown on the plat of a portion of the William C. Bowering Donation Land Claim recorded in Book 1, Page 19, Plat Records; thence North along the East line of said Tract 4, a distance of 151.67 feet, more or less, to a point 225 feet South of the South line of NE Thompson Street, said point being on the Southerly line of a tract of land conveyed to Mary F. Kennard by Deed recorded August 29, 1922 in Book 890, Page 302, Deed Records; thence Westerly along the Southerly line of said Kennard Tract, 195.22 feet, more

or less, to the place of beginning, the same being a portion of Tract 4, BOWERING TRACT."

(Boldface added.) It is undisputed that 151.88 feet from the starting point south along the east line of NE 28th Avenue ends at a point approximately 10 feet into the right-of-way of NE U.S. Grant Place, which logically corresponds to the 10-foot strip conveyed to the City of Portland in 1924. After completing the purchase, plaintiffs learned the property's true dimensions, using the streets and tract line as boundaries, when they had the property surveyed to determine how many lots they could subdivide from the property. They also learned that the city would not allow six subdivided lots; they could subdivide the property into only four, possibly five, lots.

Plaintiffs brought this action against Chicago Title, Cooper, and Realty Trust[1] for various claims, all of which were decided on summary judgment against plaintiffs. On Chicago Title's motion for summary judgment, the trial court concluded that the legal description provided by Chicago Title accurately described the property conveyed to plaintiffs, that is, the description did not include the 10-foot strip previously conveyed to the City of Portland:

"In my opinion, the description does not include that [10-foot] strip, because it says that the property line runs south 'to the north line of NE U.S. Grant Place, as now laid out and established,' and 'thence, Easterly, along the north line of NE U.S. Grant Place.' Clearly, the property, thus described, lies to the north of U.S. Grant Place, as 'now laid out and established,' meaning at the time of the conveyance from Cooper to plaintiffs."

The trial court further explained that the dimension given of "151.88 feet, more or less," was approximate and not inconsistent with NE U.S. Grant Place providing the southern border of the property, and, even if it were inconsistent, ORS 93.310 (set out below, 263 Or App at 426) required the court to resolve that inconsistency in favor of using the established street as the property boundary. Because the parties agreed that the accuracy of the legal description was the only issue presented as to Chicago Title, the trial court

_____

[1] Realty Trust is not a party to this appeal.

granted summary judgment to Chicago Title on plaintiffs' claims for breach of the title policy and negligence.

Later, on Cooper's motion for summary judgment, the trial court adhered to the earlier ruling and concluded that, because Chicago Title's legal description did not include the 10-foot strip conveyed to the City of Portland—the same description used in the warranty deed—Cooper was entitled to summary judgment on plaintiffs' claims for breach of contract and breach of the covenants in the warranty deed. On appeal, plaintiffs contend that the trial court erred in granting summary judgment to Chicago Title and Cooper on those claims.

We begin with the trial court's construction of the legal description, because it informs in large part our disposition of this appeal. The dispute on appeal, as it was below, is whether the legal description inaccurately described the property conveyed to plaintiffs by including the 10-foot strip that had been previously conveyed to the City of Portland. Plaintiffs' only argument in this respect is that the call of 151.88 feet cannot be ignored, that is, it is too specific to be rendered merely "approximate" by the words "more or less," particularly when the dimension is a full 10 feet off. We conclude, however, as did the trial court, that the legal description unambiguously conveyed only to the north line of NE U.S. Grant Place.

The disputed portion of the deed provides, "thence South along the East line of NE 28th Avenue, 151.88 feet, more or less, to the North line of NE U.S. Grant Place, as now laid out and established." The north line of NE U.S. Grant Place "as now laid out and established" clearly means the line of the street as "laid out and established" at the time of the transfer from Cooper to plaintiffs. Plaintiffs do not contend otherwise. The measurement of 151.88 feet, more or less, in the call does not create an ambiguity in an otherwise very clear property line. The use of the term "more or less" indicates that the measurement may be approximate or inaccurate. *See Weniger v. Ripley*, 134 Or 265, 277, 293 P 425 (1930) (observing that "the qualifying words 'more or less,' * * * mean 'approximately,' as distinguished from definite, precise, amounts").

While we appreciate plaintiffs' argument that a person would not assume that a measurement to the hundredths of a foot would be off by 10 feet, we cannot agree with plaintiffs that that necessarily causes the legal description here to become ambiguous or inaccurate. What plaintiffs' argument fails to recognize is that, in construing any written instrument, our *duty* is to effectuate the intention of the parties to the transaction. *See, e.g.,* *O'Gorman v. Baker et ux,* 219 Or 170, 189, 347 P2d 85 (1959) ("In construing a deed, it is the duty of the court to give effect to the intention of the parties."). Here, the intent of the parties is clear from the written instrument itself—Cooper intended to convey and plaintiffs intended to purchase (and to insure title to) a piece of property that ended at the north line of NE U.S. Grant Place. Moreover, even if the legal description were ambiguous, plaintiffs nowhere assert that they intended to purchase (or insure title to) part of the road, nor could they plausibly do so. That plaintiffs believed that the property's dimensions contained within the intended and described boundaries were greater than they actually were—based on the "more or less" calls—does not change the fact that the property's boundaries were accurately set out in the legal description.[2] The purpose of the legal description here was to describe the property's *boundaries*, which it did, not to recite a quantity of property. *See Weniger,* 134 Or at 277 ("When a deed indicates an intention that quantity shall prevail over courses and measurements that intention will be given effect; but generally the recital of quantity is subordinated to boundaries, measurements, courses, etc.").

Thus, we agree with the trial court's construction of the legal description in the title policy and the deed.

---

[2] Because we conclude that the legal description is not ambiguous, we do not need to resort to extrinsic evidence or rules of construction to resolve any ambiguities. However, we note that ORS 93.310, which provides rules of construction for property legal descriptions, also supports our reading of the property description. That statute provides, in part:

"(1) Where there are certain definite and ascertained particulars in the description, the addition of others, which are indefinite, unknown or false, does not frustrate the conveyance, but it is to be construed by such particulars, if they constitute a sufficient description to ascertain its application.

"(2) When permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines, angles or surfaces, the boundaries or monuments are paramount."

However, that is not the end of our inquiry. We next address whether that construction necessarily forecloses plaintiffs' claims against Chicago Title and Cooper, as a matter of law.

Briefly, with respect to plaintiffs' claims against Cooper for breach of contract and breach of the covenants in the warranty deed, plaintiffs offer no argument that would permit those claims to survive if the legal description does not contain the 10-foot strip conveyed to the city. First, the parties' purchase and sale agreement contained no terms that the property was of any particular dimensions or size (such as six city lots), and, second, based on our construction of the legal description, the warranty deed purported to convey title to exactly what plaintiffs obtained. The trial court did not err in granting summary judgment to Cooper.

With respect to their claims for breach of contract and negligence brought against Chicago Title, however, plaintiffs argue that the legal description is not the whole story. Essentially, plaintiffs argue that, even if the words "more or less" somehow negate the distance calls in the legal description, Chicago Title breached the title policy, and was negligent, when it failed to discover and disclose the 1924 deed to the City of Portland, which was in the public record and would have been discovered with a reasonable title search. In connection with that argument, plaintiffs assert that, based on the title policy issued by Chicago Title, they reasonably believed that the dimensions of the property they purchased were 10 feet larger and that they were damaged by that false information.

With respect to their claim for breach of the title policy, plaintiffs' argument fails based on the plain terms of the title policy. The policy insured title only to the property described in the legal description (it insured against loss or damage incurred "by reason of *** [t]itle to the estate or interest described in Schedule A being vested other than as stated therein"), and also expressly excepted from coverage any loss or damage "which arise by reason of *** [d]iscrepancies, conflicts in boundary lines, shortage in area, encroachments or other facts which a correct survey would disclose." Because we conclude, as did the trial court, that the legal description did not include the 10-foot strip

previously conveyed to the City of Portland, Chicago Title did not breach the title policy, and it was entitled to summary judgment on that claim.

With respect to their negligence claim, plaintiffs' argument on appeal may have some merit. However, they failed to make that argument below, and there is no evidence in the summary judgment record to support it. In opposition to Chicago Title's motion for summary judgment, plaintiffs solely argued that the legal description unambiguously included the 10-foot strip previously conveyed, and, alternatively, that the description is ambiguous and requires extrinsic evidence to resolve (although plaintiffs did not offer any such extrinsic evidence).[3] Plaintiffs offered no evidence or argument regarding Chicago Title's standard of care, what plaintiffs' reasonable beliefs were regarding the property dimensions, or how they were damaged. It was plaintiffs' burden to meet Chicago Title's motion with evidence to create a genuine issue of material fact on their negligence claim. ORCP 47 C ("The adverse party has the burden of producing evidence on any issue raised in the motion as to which the adverse party would have the burden of persuasion at trial."). Plaintiffs did not do that. Accordingly, the trial court did not err in granting summary judgment to Chicago Title.

Affirmed.

---

[3] The record on summary judgment included the following evidence: the 1924 City of Portland ordinance accepting the 10-foot strip, the 1924 deed, the warranty deed from Cooper to plaintiffs, the title insurance policy, the preliminary title report, and the plat of plaintiffs' later partition of the property. Plaintiff Kraft also offered an affidavit that attested only that Chicago Title had failed to bring to his attention the existence of any conveyance not listed in the title report, did not alert him to the existence of the city ordinance, and that a physical inspection of the property did not reveal the 1924 conveyance.